19-1157

*Spadaro v. United States Customs and Border Protection, et al.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

————————

August Term, 2019

(Argued: May 4, 2020　　　Decided: October 20, 2020)

No. 19-1157

————————

SARO SPADARO,

*Plaintiff-Appellant,*

— v. —

UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES DEPARTMENT OF STATE, FEDERAL BUREAU OF INVESTIGATION, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UNITED STATES DEPARTMENT OF JUSTICE,

*Defendants-Appellees.*

————————

Before:　　　　LOHIER, BIANCO, and PARK, *Circuit Judges.*

————————

Plaintiff-appellant Saro Spadaro appeals from a judgment of the United States District Court for the Southern District of New York (Sullivan, *J.*) entered in favor of defendants-appellees United States Customs and Border Protection, the United States Department of State, the Federal Bureau of Investigation, United States Citizenship and Immigration Services, and the United States Department of Justice. Spadaro filed his complaint under the Freedom of Information Act, 5 U.S.C. § 552, seeking documents related to the revocation of his visa. The district court granted defendants-appellees' motion for summary judgment, upholding

their claims of statutory exemptions, and entered judgment on March 27, 2019. Because we conclude that the contested documents pertain to the issuance and refusal of a visa, we hold that they were properly withheld under FOIA Exemption 3, and specifically INA § 222(f). We also find Spadaro's other arguments as to why Exemption 3 does not protect the withheld documents from disclosure to be unpersuasive. Accordingly, and for the reasons set forth in a separate summary order addressing FOIA Exemption 5 filed simultaneously with this Opinion, we **AFFIRM** the judgment of the district court.

———————

ROBERT S. GROBAN, JR., Berry Appleman & Leiden LLP, New York, NY (David J. Clark, Matthew S. Aibel, Epstein Becker & Green, P.C., New York, NY, *on the brief*), *for Plaintiff-Appellant*.

STEPHEN CHA-KIM, Assistant United States Attorney (Benjamin H. Torrance, Assistant United States Attorney, *on the brief*), *for* Audrey Strauss, Acting United States Attorney for the Southern District of New York, New York, NY, *for Defendants-Appellees*.

———————

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiff-appellant Saro Spadaro brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against defendants-appellees United

States Customs and Border Protection ("CBP"), the United States Department of State ("DOS"), the Federal Bureau of Investigation ("FBI"), United States Citizenship and Immigration Services ("USCIS"), and the United States Department of Justice ("DOJ" and, collectively, "the government"), in the United States District Court for the Southern District of New York (Sullivan, *J.*). Spadaro sought complete and unredacted records relating to himself generally and relating to the government's decision to prudentially revoke his visa in 2008. In response, the government invoked certain statutory exemptions, including FOIA Exemption 3, which protects from disclosure records that are specifically exempted by statute, and FOIA Exemption 5, which protects from disclosure attorney-client and deliberative communications. The district court granted summary judgment in the government's favor, holding that it properly withheld the documents under the exemptions. On appeal, Spadaro principally argues that Exemption 3 does not apply to the material at issue because the governing statute, § 222(f) of the Immigration and Nationality Act of 1952 ("INA"), codified at 8 U.S.C. § 1202(f), only protects material that relates to the issuance or refusal of visas, while these documents relate to the revocation of his visa. He further contends that Exemption 5 does not apply because of, *inter alia*, waiver and misconduct by the government.

3

In a separate summary order filed simultaneously with this Opinion, we affirm the district court's ruling as to Exemption 5. We conclude here that under Exemption 3 – and specifically pursuant to INA § 222(f) – documents that pertain to a visa revocation fall within the statute's coverage and are thus protected from disclosure. We also find Spadaro's other arguments as to why Exemption 3 does not protect the withheld documents from disclosure to be unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

## BACKGROUND

### I. Facts

Spadaro, a citizen of Italy who resides on the Dutch Caribbean island of St. Maarten, seeks information regarding the DOS's decision to revoke his B-1/B-2 visa, which has prevented him from traveling to the United States. Prior to the revocation, Spadaro frequently traveled to the United States for business and leisure. From about 2000 to March 2006, he entered the country using the Visa Waiver Program, until he was informed that he would need to secure a visa for further visits. Spadaro applied for a visa, and on March 30, 2006, after clearing the required security checks, he was issued a combination B-1/B-2 visitor's visa from the DOS through the United States Embassy in Bridgetown, Barbados. Following

issuance, Spadaro used the five-year B-1/B-2 visa to travel to the United States on multiple occasions.

On October 22, 2008, Spadaro received notice from the DOS that his visa had been "prudentially revoked." Joint App'x at 617, 668. A "prudential revocation" is a mechanism by which the DOS can revoke visas "if an ineligibility or lack of entitlement is suspected, when [a noncitizen] would not meet requirements for admission, or in other situations where warranted." Foreign Affairs Manual § 403.11. The DOS based its decision on INA § 212(a)(3)(A)(ii), 8 U.S.C. § 1182(a)(3)(A)(ii), which permits the DOS to bar the admission of a foreign national who the DOS "knows[] or has reasonable ground to believe" will engage in unlawful activity in the United States. Appellant Br. at 2 (quoting 8 U.S.C. § 1182(a)(3)(A)(ii)). Spadaro appealed this decision with the DOS, contending that the revocation was improper because he had no criminal record. On January 26, 2010, the DOS affirmed its decision to revoke the visa under INA § 212(a)(3)(A)(ii). In February 2014, October 2014, and February 2017, Spadaro re-submitted visa applications, which the DOS subsequently denied.

Spadaro alleges that at a meeting on or around January 29, 2013, two FBI agents admitted to him that there was no evidence to support the revocation.

5

According to Spadaro, the FBI agents revealed that, in the early 2000s, the government had investigated whether Spadaro's father, Rosario Spadaro, had committed insurance fraud or money laundering in connection with a damages claim he made after Hurricane Lenny in 1999. Despite the investigation, labeled "Operation Blackbeard, Sicilian Mafia," Joint App'x at 679, 690, no charges were filed in the United States against Spadaro or his father, and the case was closed.

Spadaro asserts that, during the meeting, the FBI agents informed him that due to confusion distinguishing him from his father, he was placed on a "watch list" as a result of the FBI investigation. Joint App'x at 621. The FBI neither confirms nor denies that Spadaro's name appears on any watch list. The FBI agents purportedly stated that the problem with his visa could be resolved, and he could get his visa back if he either gave them information on criminal activities or paid a $3 million "civil forfeiture" payment for crimes allegedly committed by his father. Joint App'x at 622. He claims that, because he rejected these offers, the government has spread false information to foreign authorities, which has hurt his business endeavors.

In February 2014, Spadaro met with two Drug Enforcement Administration ("DEA") agents. According to Spadaro, they similarly told him that they could

assist with his visa if he gave them information on criminal activity. Spadaro asserted that he had no information to give, and the DEA subsequently informed him that it could not assist with his visa.

Since his meetings with the FBI and DEA, Spadaro has experienced application and travel delays in foreign countries. Spadaro believes that these disruptions have been caused by the spread of incorrect information about him by U.S. officials and represent an attempt to force him to cooperate with their investigations. For example, on March 18 and 20, 2014, while traveling to and from Panama, Spadaro was stopped and questioned by Panamanian immigration officials before being allowed to enter and exit the country.

Spadaro later encountered issues in Anguilla when trying to obtain a landholding license. Spadaro claims that the only reason that the Anguillan authorities have not approved the license is a letter dated October 21, 2014, in which Jeffrey Stanley, Legal Attaché to the U.S. Embassy in the Bahamas, repeated several of the allegations that the FBI and DEA made against Spadaro to an Inspector in the Royal Anguilla Police Force. In addition, in 2016, while traveling to Montreal, Spadaro was stopped and questioned about his business dealings before being told that he was on a "no go list." Joint App'x at 604. He contends

that these instances demonstrate that the government is trying to spread misinformation about him in order to "extort his cooperation." Appellant Br. at 12.

Seeking information that the government had about himself generally and the revocation of his visa specifically, Spadaro submitted FOIA requests to the DOS, USCIS, CBP, the DOJ, and the FBI. In response, Spadaro explains that the government agencies identified 3,200 pages of documents responsive to Spadaro's requests, withheld 2,229 pages, and produced 971 of those pages, 774 of which Spadaro describes as "heavily redacted." Appellant Br. at 12. Specifically, the CBP identified 436 pages of responsive documents, all of which were released with redactions under FOIA Exemptions 6, 7(C), and 7(E). Of the 107 responsive documents identified by the DOS, 39 were released in full, five were withheld in part, and 63 were withheld in full under FOIA Exemptions 3, 5, and 7(E). USCIS identified 34 pages responsive to Spadaro's request, of which 26 pages were released in full, six were withheld in part, and two were withheld in full under FOIA Exemptions 7(C) and 7(E). Of the 2,798 pages reviewed by the FBI, 462 were released in full or in part after withholdings were made under FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E).

## II. Procedural History

Spadaro filed this lawsuit on January 4, 2016, and the parties each moved for summary judgment in 2017. At oral argument on March 12, 2018, the district court ruled from the bench, partially granting the government's motion for summary judgment, and fully denying Spadaro's cross-motion, as to Exemptions 1, 3, 5, 6, 7(C), and 7(D). The court also determined that the government had not met its burden in claiming FOIA Exemption 7(E). The next day, March 13, the district court issued an order setting forth its rulings from the oral argument and directing further briefing on the remaining issues.

On March 26, 2018, the parties submitted a joint letter in which Spadaro requested that the district court reconsider its rulings on Exemptions 3 and 5. In the letter, the government also agreed to submit revised affidavits and a revised *Vaughn* index[1] as to Exemption 7(E). On May 17, 2018, the district court issued an order rejecting Spadaro's request that it reconsider its decision as to FOIA Exemption 3, ordering the parties to file renewed cross-motions for summary

---

[1] A *Vaughn* index, derived from *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), "number[s] and identif[ies] by title and description documents that are being withheld and specif[ies] the FOIA exemptions asserted." *N.Y. Times Co. v. U.S. Dep't of Justice*, 756 F.3d 100, 105 (2d Cir.), *opinion amended on denial of reh'g*, 758 F.3d 436 (2d Cir.), *supplemented*, 762 F.3d 233 (2d Cir. 2014).

judgment on Exemption 5, and directing the parties to address the issue of segregability.[2]

The parties renewed their cross-motions for summary judgment on Exemptions 5 and 7(E), and on March 25, 2019, the district court granted the government's motion and denied Spadaro's motion. The district court entered judgment on March 27, 2019.

Spadaro timely filed a notice of appeal on April 25, 2019. Spadaro seeks review of multiple decisions by the district court: (1) the March 12, 2018 rulings from the oral argument on the motions for summary judgment; (2) the March 13, 2018 order memorializing the rulings from oral argument; (3) the May 17, 2018 order; (4) the March 25, 2019 order; and (5) the March 27, 2019 entry of judgment. Spadaro first argues that the district court erred by permitting the DOS to withhold and redact documents under FOIA Exemption 3, which he claims relates only to the disclosure of documents pertaining to the issuance of a visa or refusal of a visa

---

[2] FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007). Spadaro does not challenge the district court's segregability finding.

– not the revocation of a visa. Second, he asserts that the government improperly withheld those documents under FOIA Exemption 7(E), which protects law enforcement techniques or procedures. Finally, he claims that the district court erred by granting summary judgment in the government's favor after finding that the government properly relied on FOIA Exemption 5 to withhold and redact documents, asserting that the government waived any privilege to matters discussed in a public letter. Spadaro does not appeal the district court's decision denying his claims under FOIA Exemptions 1, 6, 7(C), and 7(D).

## DISCUSSION

Spadaro appeals the district court's order granting summary judgment to the government, which allowed the DOS to withhold and redact certain documents based upon enumerated exemptions to FOIA. We focus here on Spadaro's arguments regarding Exemption 3 and address in a separate summary order his arguments regarding Exemption 5. At issue are documents withheld in full or in part by the DOS, as set forth in its *Vaughn* indices.[3] According to the *Vaughn* indices, the material withheld pursuant to Exemption 3, and specifically INA § 222(f), "pertains directly to the issuance or refusal of a visa to enter the

---

[3] We use the term "withheld documents" in this Opinion to refer to documents that the government withheld in full or in part because of redactions.

United States." Joint App'x at 283; *see also* Joint App'x at 284–94, 593–94.

Spadaro claims that the district court erred by permitting the DOS to rely on Exemption 3 because "(a) documents concerning [his] visa revocation do not relate to the issuance or refusal of visas, and therefore are not protected from disclosure by INA § 222(f) (8 U.S.C. § 1202(f))," and (b) even if the confidentiality requirement of INA § 222(f) applies to the withheld documents, the documents should be released in the interest of the ends of justice under that provision. Appellant Br. at 14, 30–31.

## I.   Standard of Review

This Court reviews a district court's grant of summary judgment in FOIA litigation *de novo*. *Wilner v. NSA*, 592 F.3d 60, 69 (2d Cir. 2009). "The agency asserting the exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure." *Id.*

Although FOIA "was enacted to promote honest and open government[,] . . . access to governmental information must be 'orderly and not so unconstrained as to disrupt the government's daily business.'" *Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (quoting *Ethyl Corp. v. EPA*, 25 F.3d 1241, 1245 (4th Cir. 1994)). To balance these concerns, the statute permits an agency to withhold

certain information pursuant to nine exemptions.  5 U.S.C. § 552(b); *see also Halpern*

*v. FBI*, 181 F.3d 279, 287 (2d Cir. 1999).

"An agency that has withheld responsive documents pursuant to a FOIA

exemption can carry its burden to prove the applicability of the claimed exemption

by affidavit."  *Wilner*, 592 F.3d at 73; *see also Carney v. U.S. Dep't of Justice*, 19 F.3d

807, 812 (2d Cir. 1994).  "Summary judgment is warranted . . . when the affidavits

describe the justifications for nondisclosure with reasonably specific detail,

demonstrate that the information withheld logically falls within the claimed

exemption, and are not controverted by either contrary evidence in the record nor

by evidence of agency bad faith."  *N.Y. Times v. CIA*, 965 F.3d 109, 114 (2d Cir.

2020) (quoting *Wilner*, 592 F.3d at 73).  Affidavits submitted by the government

"are accorded a presumption of good faith."  *Carney*, 19 F.3d at 812 (quotation

marks omitted).  This presumption "cannot be rebutted by purely speculative

claims about the existence and discoverability of other documents."  *Grand Cent.*

*P'ship, Inc.*, 166 F.3d at 489 (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200

(D.C. Cir. 1991)).

## II.  FOIA Exemption 3

Under FOIA Exemption 3, an agency may withhold material that is

"specifically exempted from disclosure by statute . . . if that statute . . . (i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3).  To claim this Exemption, the government must demonstrate that: "(1) the statute invoked qualifies as an [E]xemption 3 withholding statute, and (2) the materials withheld fall within that statute's scope."  *A. Michael's Piano, Inc. v. FTC*, 18 F.3d 138, 143 (2d Cir. 1994).  Here, the government invokes § 222(f) of the INA as its statutory basis for withholding the documents at issue under Exemption 3.

Section 222(f) of the INA is entitled "Confidential nature of records," and provides that "[t]he records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States," with two narrow exceptions for disclosures to courts or foreign governments.  8 U.S.C. § 1202(f).

As to the first requirement for application of Exemption 3, we conclude that INA § 222(f) is a qualifying statute because it clearly "refers to particular types of

14

matters to be withheld," 5 U.S.C. § 552(b)(3)(A)(ii), that is, records "pertaining to the issuance or refusal of visas or permits to enter the United States," INA § 222(f).[4] *Accord Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983) ("Every court which has considered the issue has concluded that section 222(f) qualifies as an Exemption 3 statute."); *see also Wiener v. FBI*, 943 F.2d 972, 982 (9th Cir. 1991); *De Laurentiis v. Haig*, 686 F.2d 192, 193 (3d Cir. 1982).

Although Spadaro concedes that the government has satisfied the first requirement under Exemption 3, he disputes whether the government has also made the requisite showing that the records at issue fall within INA § 222(f)'s scope. As a threshold matter, he argues that the government cannot invoke INA § 222(f) for withheld documents that were reviewed by the DOS in connection with his visa applications because they were not generated in the course of his applications. Moreover, he asserts that, for those documents that specifically reference visa revocation, INA § 222(f) does not apply because revocation documents do not pertain to "the issuance or refusal of visas." Finally, he contends that "this Court should direct the DOS to release the [withheld] documents in the

---

[4] The government also argues that it is a qualifying statute under 5 U.S.C. § 552(b)(3)(A)(i) because, although it allows for disclosure to courts or foreign governments under limited circumstances, it confers no such discretion upon the DOS to disclose these confidential records to the public. However, we need not address this alternative argument.

interests of justice in this case even if INA § 222(f) otherwise bars their release."

Appellant Br. at 31. We address each argument in turn.

### 1. Documents Reviewed in Connection with the Visa Applications

Spadaro applied for a visa on four occasions – in March 2006, February 2014, October 2014, and February 2017. As relevant to this appeal, Eric F. Stein of the DOS submitted two declarations: one regarding documents from the DOS, *see* Joint App'x at 269–82, and one regarding documents referred to the DOS by the FBI, *see* Joint App'x at 583–92. As to the latter declaration, Stein explains that the FBI sent eight documents to the DOS for consultation, and information was ultimately withheld in five of them. In these declarations, Stein sets forth his procedure for processing Spadaro's FOIA requests and withholding certain information pursuant to FOIA exemptions. In addition, each declaration from Stein is accompanied by a *Vaughn* index. Based on the indices, the government invoked Exemption 3 and INA § 222(f) to withhold approximately two dozen records (consisting of 188 pages) in full or in part. It did so, according to its *Vaughn* index, because "[t]he withheld information pertains directly to the issuance or refusal of a visa to enter the United States." *E.g.*, Joint App'x at 283. Specifically, the government asserts that the withheld records were all reviewed in connection with

16

one or more of Spadaro's visa applications, and are therefore protected by INA § 222(f).

Spadaro claims that the dates of the withheld documents do not correspond to the dates of his applications for visas, and thus cannot be related to such applications. Moreover, he highlights that because some of the documents do not have dates, such documents cannot pertain to the issuance of a visa. Below, the district court found that "[t]he dates attributed to the documents . . . do not purport to indicate when the documents were *reviewed* in connection with a visa application; they merely identify the dates on which the document[s] were created." Special App'x at 22. Thus, the district court concluded, "there is nothing about the dates . . . that undermines the contention that those documents were considered during the adjudication of [Spadaro's] later-filed visa application[s]." Special App'x at 22.

To the extent that Spadaro asserts that a document must be *created* in connection with the visa application to pertain to the application under INA § 222(f), we find that argument unpersuasive. Although we agree with courts that have cautioned that INA § 222(f) cannot be used "to withhold information that was not gathered, used, nor is being used to determine an actual past or pending

17

visa application," *Darnbrough v. U.S. Dep't of State*, 924 F. Supp. 2d 213, 218 (D.D.C. 2013) (citing *Immigr. Just. Clinic of Benjamin N. Cardozo Sch. of Law v. U.S. Dep't of State*, No. 12 Civ. 1874 (GBD), 2012 WL 5177410, at *2 (S.D.N.Y. Oct. 18, 2012)), that is not the situation here. The affidavits and *Vaughn* indices provide that the documents were reviewed in connection with a visa application and ultimate refusal of a visa. The confidentiality of documents reviewed in connection with the visa application (and potentially also relied upon in the adjudication of that application) is necessary to protect the thought-process of the decisionmakers, and such documents clearly fall within the ambit of INA § 222(f), which refers broadly to protecting documents "pertaining to the issuance or refusal of visas," rather than only documents submitted by the visa applicant. *See Medina-Hincapie*, 700 F.2d at 744. The government's affidavits addressing this issue are "accorded a presumption of good faith," *Wilner*, 592 F.3d at 69 (quotation marks omitted), and Spadaro has not adequately rebutted the claim that the records were reviewed as part of his visa application processes.

Thus, this case is unlike *Darnbrough*, in which the DOS conceded that the document at issue was not related to any process to obtain a visa or permit, but rather was simply contained in a database. 924 F. Supp. 2d at 218–19; *see also*

*Immigr. Just. Clinic of Benjamin N. Cardozo Sch. of Law*, 2012 WL 5177410, at *1 (INA

§ 222(f) did not permit withholding of document when it was "undisputed that

there has never been any actual visa application"). In short, because there were

visa applications submitted by Spadaro, and the government affirms, without

dispute, that the withheld documents were reviewed for one or more of those

applications, *see* Joint App'x at 283–94, we conclude that the district court correctly

determined that these documents fall within the scope of INA § 222(f) and are

protected from disclosure under Exemption 3.

### 2. Visa Revocation Records

Spadaro also challenges the district court's ruling that Exemption 3 applies

to two documents referenced in the DOS's *Vaughn* index that are entitled "Visa

Revocation Service" and "Revocation Case."[5] Joint App'x at 294–95. Spadaro

asserts that, under the statutory framework, revocation documents are distinct

from documents that relate to the issuance or refusal of visas, and thus are not

shielded from disclosure. More specifically, his argument requires us to consider

---

[5] As an initial matter, Spadaro argues the fact that the DOS identified only two documents about his prudential revocation "seems impossible." Appellant Br. at 20. Spadaro's unfounded speculation about the number of documents available is not enough to overcome the presumption of good faith afforded the affidavits. Thus, we reject any such challenge to the sufficiency of the agency's declarations regarding the documents that it found. *See Grand Cent. P'ship, Inc.*, 166 F.3d at 489.

19

whether documents that relate solely to the revocation of a visa "pertain[] to the issuance or refusal of visas or permits to enter the United States," and thus fall within the ambit of INA § 222(f). We hold today, as a matter of first impression in this Circuit, that they do.

The government argues that "the term 'issuance' of visas encapsulates later actions, such as revocation, that inherently implicate (by revisiting and nullifying) the underlying decision to issue a visa in the first place." Appellees Br. at 18. The district court below agreed. In doing so, it adopted the reasoning of *Soto v. United States Department of State*, in which a federal district court in the District of Columbia found that "[i]t is not difficult to see how records that document the revocation of a visa—or that were relied upon in the course of revoking a visa—could 'pertain[] to the issuance or refusal of [a] visa[].'" No. CV 14-604, 2016 WL 3390667, at *3 (D.D.C. June 17, 2016) (quoting 8 U.S.C. § 1202(f)). In reaching this decision, the district court in *Soto* recognized that "[a]lthough the issuance of a visa is undoubtedly a 'distinct' act from the revocation of that same visa, the relevant question is not one of equivalence but of pertinence." *Id*. at *4 (citation omitted). The district court also examined the structure of the INA, finding relevant the fact that 8 U.S.C. § 1201(i), which gives the DOS the power to revoke visas, is found

20

within a section entitled "Issuance of Visas." *Id.* It therefore concluded that documents pertaining to visa revocation fell within the ambit of INA § 222(f). *Id.*

Spadaro, instead, relies on a district court in this Circuit, which held that material relating to visa revocations is not covered by INA § 222(f). In *El Badrawi v. Department of Homeland Security*, the district court, relying on the language of the statute as well as the canon of *expressio unius*, reasoned that "while both 'issuance' and 'refusal' of visas are explicitly mentioned, 'revocation' is not." 583 F. Supp. 2d 285, 311 (D. Conn. 2008). Thus, the district court held that "records pertaining to visa revocation are not protected under the INA." *Id.* The court also examined the legislative history of the statute, which it concluded provided further support for its determination that Exemption 3 did not cover visa revocation records. *Id.* at 312; *see also Mantilla v. U.S. Dep't of State*, No. 12-21109-CIV, 2012 WL 4372239, at *4 (S.D. Fla. Sept. 24, 2012) (same); *Guerra v. United States*, No. C09-1027RSM, 2010 WL 5211613, at *2 (W.D. Wash. Dec. 15, 2010) (declining to "broaden the reach of this statutory language" by applying the statute to requests for hardship waivers).

Although exemptions under FOIA "must be narrowly construed," *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976), we agree with the analysis in *Soto* and

21

conclude that the plain language of INA § 222(f) encompasses visa revocations.

When interpreting a statute, we begin with the plain language of the statute, "giving the statutory terms their ordinary or natural meaning." *United States v. Lockhart*, 749 F.3d 148, 152 (2d Cir. 2014) (quotation marks omitted). When that meaning is not clear, we make use of "a variety of interpretive tools, including canons, statutory structure, and legislative history." *Id.*; *see also United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("When the plain language and canons of statutory interpretation fail to resolve statutory ambiguity, we will resort to legislative history."). However, "[w]hen the language of a statute is unambiguous, 'judicial inquiry is complete.'" *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 290 (2d Cir. 2002) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)); *see also Lee v. Bankers Tr. Co.*, 166 F.3d 540, 544 (2d Cir. 1999) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous.").

In this case, INA § 222(f), as a qualifying statute under Exemption 3, keeps matters "pertaining to the issuance or refusal of visas or permits to enter the United States" confidential. Although the statutory language refers only to issuances or refusals on its face, the use of the word "pertaining" makes clear that

22

the reach of the statute is not so limited. "Pertain" is defined as "[t]o relate directly to; to concern or have to do with." *Pertain*, *Black's Law Dictionary* (11th ed. 2019); *see also Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (explaining that the ordinary meaning of the phrase "relating to," in the Federal Aviation Act, "is a broad one—'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with'" (quoting *Black's Law Dictionary* (5th ed. 1979))). Thus, we conclude that the use of the broad phrase "pertaining to" plainly gives the statute a wider reach than mere issuances and refusals. *See, e.g.*, *Airaj v. United States*, No. CV 15-983, 2016 WL 1698260, at *8 (D.D.C. Apr. 27, 2016) ("The plain language of the statute, which encompasses records 'pertaining' to the issuance or refusal of visas, discourages such a strict interpretation of Section 222(f)."), *aff'd sub nom. Airaj v. U.S. Dep't of State*, No. 16-5193, 2017 WL 2347794 (D.C. Cir. Mar. 30, 2017).

Applying that broad phrase to the circumstances here, it is clear that the revocation of a visa pertains to the issuance of a visa because they are so closely related – namely, a revocation constitutes a nullification of that issuance. *See Soto*, 2016 WL 3390667, at *3–4; *see also Vizcarra Calderon v. U.S. Dep't of Homeland Sec.*, No. 18-CV-764, 2020 WL 805212, at *3 (D.D.C. Feb. 18, 2020) (relying on *Soto* to find

that a document similarly entitled "Visa Revocation Services" was properly withheld under Exemption 3). Indeed, a visa can never be revoked without first being issued. As the court in *Soto* aptly described it, "the issuance and revocation of visas represent two sides of the same coin." S*ee Soto*, 2016 WL 3390667, at *4. Indeed, by way of analogy, it is clear that a refund receipt for a product would be a document "pertaining to" the purchase of that product. Because we agree that the question here is one of pertinence, not equivalence, *id.*, we hold that the plain language of INA § 222(f) encompasses revocation documents.

Like the court in *Soto*, we are unpersuaded by the analysis in *El Badrawi¸* which focused on the terms "issuance" and "refusal" and relied upon the canon of *expressio unius* – namely, the explicit mention of one thing is the exclusion of another left unmentioned – to determine that INA § 222(f) did not reach revocations. *See* 583 F. Supp. 2d at 311. As a threshold matter, we rely upon canons of construction only if the language of the statute is ambiguous, which is not the situation here. *See Power Auth. v. M/V Ellen S. Bouchard*, 968 F.3d 165, 170 (2d Cir. 2020) ("Only if the text is ambiguous do we 'turn to canons of statutory construction for assistance in interpreting the statute.'" (quoting *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir. 2015))). In any event, even if there were

ambiguity here, the statutory structure also supports our conclusion. *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 36 (1998) ("[A] statute is to be considered in all its parts when construing any one of them."); *see also Bloom v. Azar*, --- F.3d ---, 2020 WL 5648519, at *3 & n.1 (2d Cir. 2020) (because the *expressio unius* canon is particularly dependent on context, "[t]he Supreme Court has often declined to rely on the . . . canon when it is insufficiently sensitive to context"). As explained by the court in *Soto*, although INA § 222(f) appears in a section of the INA entitled "Application for visas," 8 U.S.C. § 1202, the subsection of the INA that provides for the revocation of visas, 8 U.S.C. § 1201(i), appears in a section of the Act entitled "Issuance of visas," *see* 8 U.S.C. § 1201. Thus, even assuming *arguendo* that the language of INA § 222(f) was ambiguous, its application to revocations is certainly buttressed by the fact that Congress used the title "Issuance of visas" to cover not just the initial issuance of the visa, but also intertwined acts such as visa renewals, non-issuances, and revocations. 8 U.S.C. § 1201(c), (g), (i).

We similarly disagree with Spadaro's reliance, as well as that of the district court in *El Badrawi,* on later amendments to the INA to glean congressional intent on this issue. Examining a later amendment to the INA, the court in *El Badrawi*

25

reasoned that Congress:

> continued to treat visa revocations separately from issuances and refusals. *See* Pub. L. 108–458, 118 Stat. 3638. For example, § 5304 of that Act, entitled "Revocation of Visas and Other Travel Documentation," can be contrasted with § 5302, "Visa Application Requirements." *Id.* The fact that the two procedures are addressed in distinct sections of the legislation evidences an intent on the part of the lawmakers that visa revocation be treated as distinct from visa application (*i.e.*, issuance or refusal of visas). Beyond mere titles, however, the legislation made discrete distinctions substantively. *See* Pub. L. 108–458 § 5304, 118 Stat. 3638, 3736 (changing judicial review for visa revocation, but not for issuance or denial).

583 F. Supp. 2d at 311–12. We must emphasize the Supreme Court's "oft-repeated warning that the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 117 (1980) (quotation marks omitted). That hazard is magnified where, as here, the subsequent amendments did not relate to the particular provision at issue and were done for an entirely different purpose. Rather, these amendments were enacted in 2004 as part of the Intelligence Reform and Terrorism Prevention Act, which sought to "reform the intelligence community and the intelligence and intelligence-related activities of the United States [g]overnment." Pub. L. No. 108-458, 118 Stat. 3638 (Dec. 17, 2004). As the government correctly notes, "the fact that Congress treated revocation and

26

issuance of visas differently for the purposes of reforming the existing revocation and issuance processes says nothing about Congress's earlier decision to treat revocations within the umbrella of visa issuance in § 1201, much less about the congressional decision to make records regarding visas confidential in § 1202." Appellees Br. at 17. In short, we conclude that these subsequent amendments have no weight in discerning congressional intent on the issue before us.

Finally, in a last-ditch effort, Spadaro attempts to distinguish the way in which his visa was revoked by the DOS and the way in which the revocations occurred in *Soto* and similar cases that found in the government's favor. He asserts that, although the plaintiffs in those cases had their visas revoked abroad under § 222(c), his visa was revoked under § 221(i) in Washington, D.C. He thus suggests that, because the revocation of his visa was a prudential revocation by the DOS rather than a consular revocation that took place overseas, the need to protect the confidentiality of the thought-process for overseas consular revocations does not apply with equal force to his domestic revocation. Spadaro, however, points to no case that has relied on such geographic limitations, and we find no reason to read

such a limitation into the statute.[6]

Our broader interpretation of the statute comports with the view that "[t]he scope of section 222(f) is not limited to information supplied by the visa applicant[;] it includes information revealing the thought-processes of those who rule on the application." *Medina-Hincapie*, 700 F.2d at 744. Spadaro fails to offer any convincing reason why Congress would not seek to protect the thought-processes of those ruling on revocations to the same extent as those ruling on issuances or refusals of visas, or would be more concerned with protecting the thought-processes on such matters of overseas consular officials as compared to DOS officials in the United States. Therefore, even if we were to determine that the statute was ambiguous, the purpose of INA § 222(f) would dictate that the confidentiality of revocation documents be included within its scope. *See Connecticut* ex rel. *Blumenthal v. U.S. Dep't of the Interior*, 228 F.3d 82, 89 (2d Cir. 2000) (holding that if a statute is ambiguous, we must "construct an interpretation that comports with [the statute's] primary purpose and does not lead to anomalous or unreasonable results").

---

[6] We also highlight that the plain text of INA § 222(f) refers to "[t]he records *of the Department of State* and of diplomatic and consular offices of the United States," 8 U.S.C. § 1202(f) (emphasis added), further undercutting Spadaro's attempt to insert a geographic limitation.

Accordingly, we conclude that the DOS officials properly invoked Exemption 3, and specifically INA § 222(f), to withhold the revocation documents.

### 3. Releasing the Records in the Interest of the Ends of Justice

Spadaro alternatively argues that even if INA § 222(f) applies pursuant to Exemption 3, the documents should be released in the interest of the ends of justice. Under INA § 222(f)(1), the Secretary of State may release certified copies of such records if a court "certifies that the information contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court." Spadaro contends that "[g]iven the Government's undisputed misuse of this material to Spadaro's detriment, and Spadaro's inability to defend himself from these Government actions, this Court should direct the DOS to release the documents in the interests of justice in this case even if INA § 222(f) otherwise bars their release." Appellant Br. at 31.

Spadaro has not adequately demonstrated that this Court or any other court requires the particular material, and he cannot rely on this subsection of the INA "to request documents from the Secretary merely for the purpose of turning those documents over to an unsuccessful FOIA applicant." *Soto v. U.S. Dep't of State*, 118 F. Supp. 3d 355, 371 (D.D.C. 2015). In other words, the function of this narrow

exception is to allow the DOS to disclose such documents in pending court proceedings, separate and apart from a FOIA action, where the court certifies its need for such documents. Therefore, the limited circumstances in which a court has relied on this subsection include a request for documents pertaining to a criminal matter, *United States v. O'Keefe*, No. 06-CR-0249, 2007 WL 1239204, at *2 n.1 (D.D.C. Apr. 27, 2007) ("There can be no question that in a criminal case regarding the handling of requests within a consulate, consular records are 'needed by the Court in the interest of the ends of justice' within the meaning of this statute."), and a request from the parties in order to allow the district court to ascertain the basis of the defendants' determination that the plaintiff was inadmissible, *Tran v. Rice*, No. 06-CV-02697-H, 2007 WL 9776703, at *1 (S.D. Cal. May 1, 2007).

In short, Spadaro has failed to meet his burden of demonstrating that the records are needed by a court "in the interest of the ends of justice," and the discretionary release of records under § 1202(f)(1) provides no basis for disclosure in this FOIA action.

## CONCLUSION

In sum, we conclude that the documents at issue are protected from

30

disclosure under Exemption 3 because they pertain to the issuance or refusal of visas to enter into the United States.[7]  Accordingly, for the foregoing reasons and the reasons stated in our separate summary order filed today, the judgment of the district court is **AFFIRMED**.

---

[7] Because the Court concludes that the documents were all properly withheld under Exemption 3, the Court need not reach Spadaro's argument regarding Exemption 7(E).