21-211-cv
*The New York Times Co. v. U.S. Department of Health and Human Services*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2021

No. 21-211-cv

THE NEW YORK TIMES COMPANY,
DOW JONES & COMPANY, INC.,
CHRISTOPHER WEAVER,
*Plaintiffs-Appellees*,

v.

UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
*Defendant-Appellant*.*

On Appeal from the United States District Court for the Southern
District of New York

ARGUED: SEPTEMBER 23, 2021
DECIDED: SEPTEMBER 30, 2021

---

* The Clerk of Court is directed to amend the caption as set forth above.

Before: CABRANES, POOLER, and BIANCO, *Circuit Judges*.

————

Defendant United States Department of Health and Human Services appeals from the January 22, 2021, judgment of the United States District Court for the Southern District of New York (Gorenstein, *M.J.*) granting summary judgment to Plaintiffs The New York Times Company, Dow Jones & Company, Inc., and Christopher Weaver. This appeal presents the question of whether a report evaluating the Indian Health Service's management and administration is a "medical quality assurance record" under 25 U.S.C. § 1675, and thus exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b)(3). We find that it is not, and, accordingly, **AFFIRM** the ruling of the district court.

————

MATTHEW E. KELLEY (Seth D. Berlin, *on the brief*), Ballard Spahr LLP, Washington, DC, (David E. McCraw, Alexandra Settelmayer, The New York Times Company, New York, NY, *on the brief*) *for Plaintiffs-Appellees*.

JENNIFER C. SIMON (Benjamin H. Torrance, *on the brief*), Assistant United States Attorneys, *for* Audrey Strauss, United States Attorney for the Southern District of New York, New York, NY, *for Defendant-Appellant*.

————

PER CURIAM:

This appeal presents the following question: Is a report evaluating the Indian Health Service's management and administration a "medical quality assurance record" under 25 U.S.C. § 1675 that is exempt from disclosure pursuant to the Freedom of Information Act, 5 U.S.C. § 552(b)(3)? Finding that it is not, we **AFFIRM** the judgment of the U.S. District Court for the Southern District of New York (Gorenstein, *M.J.*).[1]

## I. BACKGROUND

Stanley Patrick Weber, a pediatrician, began working for the Indian Health Service ("IHS") in the mid-1980s. In 1992, he moved to an IHS hospital in Browning, Montana. Soon thereafter, community members and IHS staff began to suspect that he was a pedophile. Their reasons for suspicion included seeing Weber with boys at Pizza Hut, hearing about an arranged camping trip with future patients, and

---

[1] The Parties consented to proceed before the Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c).

3

learning that he had hosted young people at his home. Weber's supervisor confronted him, and the hospital's CEO alerted IHS officials.

In 1995, rather than firing Weber, IHS transferred him to a hospital in Pine Ridge, South Dakota. Suspicions of pedophilia followed Weber to South Dakota. However, despite at least two investigations—and excepting a temporary suspension during one of them—Weber continued to work for IHS in South Dakota for 20 years.

In 2018, Weber was convicted in the United States District Court for the District of Montana of sexually abusing patients. In 2019, he was convicted of the same in the United States District Court for the District of South Dakota. Weber was sentenced to over 18 years in prison for crimes committed in Montana, and five consecutive life sentences for crimes committed in South Dakota.

These criminal cases prompted additional investigations, including by journalists and government entities. In October 2018, IHS

issued a solicitation, described as an "IHS Internal Medical Quality Assurance Review."[2] This solicitation described IHS's intent to "review . . . [IHS's] policies and procedures regarding the reporting of allegations of sexual abuse of IHS patients by IHS clinical staff."[3] In May 2019, IHS awarded a contract to conduct this review to Integritas Creative Solutions LLC ("Integritas").

In January 2020, Integritas delivered its report to IHS. Among other documents, this report was based on a review of agency policies and procedures, personnel files, and other agency correspondence. The report included "recommendations for protecting IHS patients," and IHS has since relied on the report "to formulate and revise policies and standard operating procedures."[4] We have reviewed the report *in camera*, and can confirm that the District Court accurately

---

[2] Joint App'x 1053.

[3] *Id.*

[4] *Id.* at 23.

5

characterized it as (1) recounting Weber's and various other IHS employees' sexual misconduct; (2) analyzing the managerial and administrative failures that enabled or tolerated this misconduct; and (3) recommending policy and management changes.

In early 2020, The New York Times Company, Dow Jones & Company, Inc. (which publishes *The Wall Street Journal*), and *Wall Steet Journal* reporter Christopher Weaver (together, "Plaintiffs") requested that IHS disclose the report under the Freedom of Information Act ("FOIA"). When they received no response, they brought suit; The New York Times Company on April 16, 2020, and Dow Jones & Company, Inc. and Christopher Weaver on April 20, 2020. IHS belatedly denied Plaintiffs' FOIA requests on May 21, 2020. It stated that the report was a medical quality assurance record that was exempt from FOIA pursuant to 25 U.S.C. § 1675. The District Court disagreed, and ordered IHS to turn over the report. The United States

6

Department of Health and Human Services (the "Department") appeals from this ruling.

## II. DISCUSSION

This appeal presents the question of whether Integritas's report evaluating IHS's management and administration is a "medical quality assurance record" exempt from FOIA under Section 805 of the Indian Health Care Improvement Act, 25 U.S.C. § 1675. We review *de novo* a district court's grant of summary judgment in a FOIA case.[5] "The agency asserting [a FOIA] exemption bears the burden of proof, and all doubts as to the applicability of the exemption must be resolved in favor of disclosure."[6]

The relevant parts of 25 U.S.C. § 1675, which define "medical quality assurance program" and, in turn, "medical quality assurance

---

[5] *Am. C.L. Union v. Nat'l Sec. Agency*, 925 F.3d 576, 588 (2d Cir. 2019); *accord Wilner v. Nat'l Sec. Agency*, 592 F.3d 60, 69 (2d Cir. 2009).

[6] *Wilner*, 592 F.3d at 69.

7

record," and establish these records' exemption from FOIA, are as follows:

**(a) Definitions**
In this section:

. . .

**(2) Medical quality assurance program**
The term "medical quality assurance program" means any activity carried out before, on, or after March 23, 2010, by or for any Indian health program or urban Indian organization to assess the quality of medical care, including activities conducted by or on behalf of individuals, Indian health program or urban Indian organization medical or dental treatment review committees, or other review bodies responsible for quality assurance, credentials, infection control, patient safety, patient care assessment (including treatment procedures, blood, drugs, and therapeutics), medical records, health resources management review, and identification and prevention of medical or dental incidents and risks.

**(3) Medical quality assurance record**
The term "medical quality assurance record" means the proceedings, records, minutes, and reports that--
(A) emanate from quality assurance program activities described in paragraph (2); and
(B) are produced or compiled by or for an Indian health program or urban Indian organization as part of a medical quality assurance program.

8

**(b) Confidentiality of records**
Medical quality assurance records created by or for any Indian health program or a health program of an urban Indian organization as part of a medical quality assurance program are confidential and privileged. Such records may not be disclosed to any person or entity, except as provided in subsection (d).
. . .
**(g) Exemption from Freedom of Information Act**
Medical quality assurance records described in subsection (b) may not be made available to any person under section 552 of Title 5.

Because § 1675 "refers to particular types of [records] to be withheld," "medical quality assurance records" are "specifically exempted from disclosure by statute" under FOIA's Exemption 3.[7]

We interpret § 1675(a)(2)'s requirement that a "medical quality assurance record" emanate from an "activity carried out . . . to assess the quality of medical care" based on "the plain language of the statute, giving the statutory terms their ordinary or natural meaning."[8]

---

[7] *See* 5 U.S.C. § 552(b)(3).

[8] *Spadaro v. U.S. Customs & Border Prot.*, 978 F.3d 34, 46 (2d Cir. 2020) (citation and internal quotation marks omitted).

Accordingly, "assess" is defined as: "to make a judgment about (something)."[9]  And "quality" is defined as: "degree of excellence."[10]  The Parties dispute the proper scope of the statutory phrase "medical care."  The Department asserts that it is broad and includes avoiding sexual abuse of patients.  Plaintiffs counter that, to the extent it includes patient safety, it refers only to preventing medical errors.  For purposes of this appeal, we assume without deciding that the Department's broader definition is accurate, and that an activity, such as an investigation, carried out to make a judgment about IHS's degree of excellence in avoiding sexual abuse of patients would be exempt from disclosure under § 1675.

The report does not make such a judgment.  While it makes a judgment about the degree of excellence of IHS administration, it does

_____

[9]    *Assess*, Merriam-Webster, https://www.merriam-webster.com/dictionary/assess (last visited Sept. 27, 2021).

[10]    *Quality*, Merriam-Webster, https://www.merriam-webster.com/dictionary/quality (last visited Sept. 27, 2021).

not evaluate the medical care IHS provides. The report focuses on administrative errors: errors in management, reporting, investigation, and communication, including by specific administrators. And it suggests changes to improve IHS's practices and policies. But the report's conclusion that IHS responded poorly to some examples of inadequate medical care is different from an evaluation of the caliber of medical care provided at IHS hospitals. The report does not link IHS's administrative errors to the incidence of sexual abuse of patients. Nor does it link these errors to the quality of other aspects of medical care at IHS hospitals.

The report's discussion of Weber's and similar cases does not change the outcome. First, the report does not evaluate the medical care provided by Weber, which IHS knew to be grossly inadequate when it solicited the report. As the Department states, "it is simple common sense that a doctor who abuses a patient . . . has failed to

11

provide quality medical care."[11] Second, the report does not make a judgment about the degree of excellence of the medical care provided at IHS hospitals. While the report links Weber's case to similar cases, it offers no judgment, for example, regarding the extent to which IHS patients experience sexual abuse. Instead, it notes only that the management and administrative errors in Weber's case were also present in the handling of other cases. Nor does the report make a judgment about the effect of the identified incidents of sexual abuse on the caliber of other aspects of medical care at IHS hospitals. In short, the report discusses sexual abuse at IHS hospitals for the purpose of evaluating IHS's management and administration, not its medical care.

While few courts have addressed this issue, *Parker v. United States* is consistent with our reasoning.[12] In *Parker*, the district court

---

[11] Def.'s Reply Br. 9.

[12] No. 18-CV-123, 2020 WL 729211 (D. Neb. Feb. 13, 2020) (Nelson, M.J.), *aff'd sub nom. Parker v. Vista Staffing Sols., Inc.*, 2020 WL 5593880 (D. Neb. Sept. 18, 2020).

held that, while § 1675 protects "records emanating from IHS'[s] credentialing and privileging process" and evaluations of services and work provided for an IHS hospital, it does not protect "documents concerning corrective actions, remedial measures, practice changes, and procedure/policy changes, taken in response to" indications of possible poor medical care—specifically "immediate jeopardy citations."[13] We take no position on the view expressed in *Parker* that § 1675 exempts from disclosure credentialing and evaluation documents. However, we agree with its conclusion that documents evaluating medical care are distinct from documents evaluating the managerial and administrative response to instances of subpar care. Here, there is no dispute that the Integritas report is the latter.

That the agency solicitation and the report use the language of § 1675 does not change the outcome. If it did, IHS could immunize any document from disclosure, which is incompatible with the

---

[13] *Id.* at *9, 11.

13

statutory policies that underlie FOIA.[14] Nor does the involvement of

IHS's Office of Quality change our conclusion. The statute references

"other review bodies," and states that "activities conducted by or on

[their] behalf" may be "includ[ed]" in a medical quality assurance

program.[15] However, these review bodies do not get a wholesale pass

from the requirements of FOIA; the documents they produce are

exempt only if they emanate from activities assessing the quality of

medical care.[16] The Department's argument that "any activity" is

broader than "any peer review activity"[17] is beside the point, as the

statute exempts "any activity" only insofar as that activity "assess[es]

the quality of medical care."[18] And we have little difficulty rejecting

the Department's various arguments about the virtues of

---

[14] *See Spadaro*, 978 F.3d at 45 (noting that FOIA exemptions "must be narrowly construed" (citation omitted)).

[15] *See* 25 U.S.C. § 1675(a)(2).

[16] *See id.* § 1675(a)(2)–(3), (g).

[17] Def.'s Br. 15-17 (citing 10 U.S.C. § 1102(j)).

[18] 25 U.S.C. § 1675(a)(2).

confidentiality, which beg the question of the intended scope of the exemption. Finally, that the report may contribute to improved medical care is beside the point. The same is conceivably true for all activities by IHS and its affiliates, but § 1675 protects from disclosure only activities that "assess the quality of medical care."[19]

To summarize, we hold that the Integritas report evaluating IHS's management and administration is not a "medical quality assurance record" under 25 U.S.C. § 1675.[20]

### III. CONCLUSION

We have considered all of the Department's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the January 22, 2021, judgment of the District Court.

---

[19] *Id.*

[20] We need not reach the issue of whether the investigation was carried out "by or for" an Indian health program. *See id.*

15